## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BARAESHEIA M. P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-174-CVE-JFJ |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Baraesheia M. P. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.    General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). In addition, when the claimant is seeking a child's disability benefit ("CDB") based on the earnings record of an insured person who is entitled to disability benefits, the claimant must: (a) be the insured person's child; (b) be dependent on the insured; (c) apply; (d) be unmarried; and (e) be under age 18; be 18 years old or over and have a disability that began before 22 years of age; or be 18 years or older and qualify as a full-time student. *See* 20 C.F.R. § 404.350. If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step

five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 20-year-old female, applied for Title II disability insurance benefits, Title XVI supplemental security income benefits, and CDB benefits on July 19, 2017, alleging a disability onset date of March 26, 2017. R. 15, 409-420. Plaintiff claimed she was unable to work due to conditions including severe depression, asthma, migraines, bipolar depression, and anxiety. *See* R. 450. Plaintiff's claims for benefits were denied initially on August 23, 2017, and on reconsideration on November 29, 2017. R. 200-218, 223-250. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on April 8, 2019. R. 40-87. The ALJ issued a

decision on May 24, 2019, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy.  R. 15-33.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff had not attained age 22 as of her alleged onset date of March 26, 2017.  R. 20.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 26, 2017.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments: depression; anxiety; and post-traumatic stress disorder ("PTSD").  *Id.*  He found Plaintiff's impairments of asthma and headaches to be non-severe.  R. 20-21.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 21-22.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had no limitation in the area of adapting or managing oneself, and moderate limitations in the three areas of (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) interacting with others.  *Id.*

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff has the following RFC:

> [Plaintiff] was 19 years 10 months of age on the alleged onset date of disability (March 26, 2017) (she is currently 22 years of age . . .) with a high school education (2015) with no past relevant work.  She is able to perform a full range of medium, light and sedentary exertion work.  Nevertheless, she is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts.  She is able to understand, remember, and carry out simple to moderately detailed instructions [ability to perform up to and including semi-skilled work] in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision.  She is afflicted with symptoms from a variety of sources, to include mental impairments, all variously described, that are of sufficient severity so as to be noticeable to her at all times, yet is able to remain attentive and response [sic] and perform work assignments within the above-cited limitations.

4

R. 22 (bolding and italics removed).  At step four, the ALJ found that Plaintiff had no past relevant work.  R. 31.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled work, such as Hand Packer (medium exertion), Laundry Sorter (light exertion), and Stuffer (sedentary exertion).  R. 31-32.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 32.  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.     Issues

Plaintiff raises five points of error in her challenge to the denial of benefits: (1) the ALJ failed to discuss and weigh objective examination findings and relevant medical evidence, including evidence from a consultative examiner; (2) the ALJ failed to fully and fairly develop the record; (3) the ALJ's step-two and step-three analysis was improper, leading to subsequent failures at the remaining steps; (4) the ALJ's consistency analysis was flawed; and (5) the ALJ's RFC is unsupported by substantial evidence.  ECF No. 15.

### IV.     Analysis

#### A.     ALJ Properly Considered Opinion and Objective Evidence

##### 1.     2015 Consultative Examination and Mental Health Records

Plaintiff argues the ALJ failed to discuss findings and opinions from consultative examiner River Smith, Ph.D., who examined Plaintiff on August 15, 2015 (19 months prior to the alleged onset date).  Dr. Smith observed generally normal mental status, apart from her report of frequent suicidal ideation with no active intent or plan.  R. 517.  He found her to be of average intellectual functioning based on fund of knowledge and vocabulary.  *Id.*  She was able to perform tasks measuring attention/concentration but she had a slow processing speed.  *Id.*  Language and

immediate recall tasks were performed well, although she only remembered 2/5 words on a delayed recall task, which improved to 4/5 with cues. She demonstrated abstract reasoning abilities and adequate insight and judgment. *Id.* Her Patient Health Questionnaire 9 (PHQ9) score was 24/27, which indicated moderate to severe depressive symptoms in the past two weeks. R. 518. Dr. Smith noted diagnostic impressions of Major Depressive Disorder, recurrent, severe; and Social Anxiety Disorder. *Id.* He summarized Plaintiff's reports of functional impairments related to depression, social anxiety, and headaches, and he stated she appeared incapable of managing funds at that time. *Id.* While the ALJ did not discuss Dr. Smith's findings or weigh his opinions, the ALJ clearly considered Dr. Smith's examination. *See* R. 24 ("A review of the exhibit list shows consultative examination in August 2015") (citing R. 515-518).

The undersigned finds that, while the ALJ did not specifically discuss Dr. Smith's observations and diagnoses, he was not required to do so. Dr. Smith's examination occurred more than a year and a half prior to Plaintiff's alleged onset date of March 26, 2017, and it clearly related to a prior application for disability benefits. Under these circumstances, the ALJ was required to consider Dr. Smith's examination findings, but he was not required to expressly discuss or weigh his findings and opinions. *See Arterberry v. Berryhill*, 743 F. App'x 227, 230 (10th Cir. 2018) ("[Claimant] cites no authority, and we have found none, requiring an ALJ and agency reviewers to discuss the opinions of a consultative examiner from a prior disability proceeding – one that may have involved different medical issues and evidence, and that resulted in a denial of benefits."); *Martin v. Berryhill*, 2018 WL 6314594, at *3-4 (W.D. Okla. Nov. 8, 2018) (finding no error in ALJ's failure to discuss consultative examination opinion rendered in connection with prior disability application). *See generally Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (explaining that doctor's medical observations relating to previously adjudicated periods

"should be *considered* by the ALJ") (emphasis added); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining that, although the record "must demonstrate that the ALJ considered all of the evidence," an ALJ "is not required to discuss every piece of evidence") (citation omitted).

Moreover, Dr. Smith's findings do not support greater mental RFC limitations than the ALJ found.  Plaintiff herself appears to acknowledge that subsequent mental health records show chronic mental health problems with mood, anxiety, and poor concentration that are consistent with Dr. Smith's observations in 2015.  *See* ECF No. 15 at 5.  The ALJ found Plaintiff's depression, anxiety, and PTSD to be severe impairments, and he assigned mental RFC limitations of performing only semi-skilled work and working with co-workers and supervisors under routine supervision.  R. 20, 22.  He noted that Plaintiff's mental health treatment records consistently showed problems with depression, anxiety, and PTSD, but she also demonstrated largely normal mental status findings.  *See* R. 25-30.

Plaintiff additionally cites various records in support of mental health problems that she alleges support greater mental health limitations.  However, most of the cited records were discussed by the ALJ.  *See* R. 578, 580-581, 583, 634-635.  Plaintiff also refers to her own and her mother's testimony (R. 65-66, 73-75), which the ALJ summarized and discussed (R. 23-24).  He found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms to be inconsistent with the other evidence of record.  R. 24.  Other records cited by Plaintiff either significantly pre-date the alleged onset date, *see* R. 816 (June 2014 treatment note), or do not demonstrate greater mental limitations than the ALJ identified, *see* R. 601-602 (In October 2016, Plaintiff reported issues with word recall and racing thoughts, and treatment provider observed depressed mood and anxious affect but otherwise normal mental status), R. 639 (partial copy of same October 2016 report).

Plaintiff also refers to a December 2016 mental health treatment note (R. 615), which Plaintiff misrepresents as stating that Plaintiff was "unable to prepare a document advocate letter to waive a fee, and Claimant was unable to prepare a fax for her application."  ECF No. 15 at 5-6. The record actually states that Plaintiff's counselor "advocated for client by preparing an advocate letter to waive the 39$ fee for sharehouse," and the counselor "attempted to fax application and letter to share house, but was unsuccessful in getting fax to go through."  R. 615.  This note does not indicate that Plaintiff was unable to do these tasks, but rather that her counselor advocated for her by doing those tasks for her.

The undersigned identifies no error in the ALJ's failure to expressly discuss Dr. Smith's findings and opinions, and Plaintiff's cited mental health records also do not support greater mental limitations than the ALJ found appropriate in the RFC.

### 2.    Obesity

Plaintiff argues the ALJ committed reversible error by failing to properly assess obesity when determining Plaintiff's RFC.  An ALJ must consider the limiting effects of obesity as part of the RFC determination.  *See* Social Security Ruling ("SSR") 19-2p, 2019 WL 2374244, at *4 (May 20, 2019).  For adults, obesity is defined as a body-mass index (BMI) of 30.0 or higher, and for children under age 20, obesity is defined as a BMI-for-age at or above the 95th percentile.  *Id.* at *2 & n.5; Centers for Disease Control and Prevention ("CDC") BMI Percentile Calculator for Child and Teen, https://www.cdc.gov/healthyweight/bmi/calculator.html (last visited May 25, 2021).  Obesity can affect exertional, postural, and manipulative functions, as well as environmental tolerance and fatigue, and "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." *Id.* at *4.  The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions."  *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. 2016).

Here, the ALJ did not expressly address obesity as an impairment, but he did note Plaintiff's height and weight as stated throughout the record. R. 23, 27-29. According to reports from several medical records, Plaintiff could be categorized as obese in 2017 and 2018. *See* R. 584 (Plaintiff was 5'8" tall and weighed 263 pounds on March 31, 2017 (age 19), equaling BMI of 40.0 and 98th percentile for age), R. 764 (5'9" tall and 273 pounds on August 2, 2017 (age 20), equaling BMI of 40.3), R. 749 (5'10" tall and 252 pounds on September 11, 2018 (age 21), equaling BMI of 36.2).[1] Plaintiff also cites a July 2017 (age 20) treatment note indicating a BMI of 41.5. R. 682. However, at the time of Plaintiff's hearing in April 2019, she testified she was 5'10" tall and estimated her weight at 180 pounds (R. 49-50), which equals a BMI of 25.8. A BMI of 25.8 falls into the low range of the "overweight" category. Therefore, Plaintiff was no longer obese at the time of her hearing.

Plaintiff argues the ALJ erred by failing to specifically discuss how Plaintiff's high BMI reduced or affected her RFC. As evidence of such impacts, Plaintiff points to an April 2017 (age 19) mental health record, in which she reported that back pain prevented her from bending over or sitting for a long period of time. R. 636. Plaintiff also points to a February 2015 (age 17) pediatric treatment note. R. 916. At that visit, Plaintiff reported back pain under her shoulder blade, which was exacerbated by certain movements. R. 916. She was reported to have a child BMI of 29.3, 94th percentile. *Id.* Her pediatrician observed full range of motion of the left shoulder, with point tenderness at the lateral margin of the scapula, and the doctor diagnosed muscle strain. *Id.*

---

[1] Plaintiff's BMI was not recorded in the medical record. The undersigned used the CDC's online BMI calculators to determine Plaintiff's BMI based on the recorded heights and weights. *See* CDC Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited May 25, 2021); CDC BMI Percentile Calculator for Child and Teen, https://www.cdc.gov/healthyweight/bmi/calculator.html (last visited May 25, 2021).

While the ALJ should have discussed the effects of Plaintiff's obesity, the undersigned identifies no reversible error in this regard.  Plaintiff points to no evidence of functional impairments resulting from obesity.  Plaintiff's isolated reports of back pain, one of which pre-dates the alleged onset date by more than two years, show no relation to Plaintiff's obesity at that time.  *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where "there is no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC").  Elsewhere in the brief, Plaintiff refers to "effects" of her weight on her functioning, but the supporting record citations describe only Plaintiff's desire to lose weight and her being prescribed medication to help with weight loss.  *See* R. 66, 78, 709, 719, 750. The diagnosis of obesity does not necessarily translate into functional limitations.  *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 758 (10th Cir. 2019) (noting that the relevant regulation "does not mandate any additional restrictions or a finding of disability" based on a claimant's obesity). Plaintiff points to no conflict or lack of development in the record regarding obesity that would amount to harmful error.

### 3.    Medication Side Effects

Plaintiff contends the ALJ did not account for nausea, fatigue, and back pain resulting from her medications.  Plaintiff points to no part of the record demonstrating that Plaintiff experienced back pain as a result of her medications, and she points only to her mother's testimony in support of experiencing nausea from her medications (R. 77).  Plaintiff also points to a single report to her care provider in May 2018 that a new medication had been making her sleepy during the day.  R. 758.  At the hearing, Plaintiff testified that Wellbutrin made her nauseated and made her stomach hurt, so that she could not eat anything, and that previous medications would make her feel the same way.  R. 70-71.

The undersigned identifies no error. The ALJ did not ignore Plaintiff's allegations in this regard but rather noted Plaintiff's testimony that she had "some nausea from her medications." R. 24 (citing Plaintiff's hearing testimony). As explained below in Part IV.D, the ALJ provided a thorough consistency analysis, explaining why he did not find Plaintiff's testimony fully persuasive. Moreover, Plaintiff and her mother both indicated in function reports that she experienced no side effects from her medications. *See* R. 465 (Plaintiff stated in August 2017 function report that none of her medications caused side effects), R. 444 (Plaintiff's mother stated in July 2017 third-party function report that Plaintiff's medications did not cause any side effects). *But see* R. 477 (Plaintiff reported in October 2017 disability report that Effexor makes her "not hungry"). Because Plaintiff apparently reported medication side effects to a health provider only once, the ALJ was not required to account for any medication-induced fatigue or nausea in the RFC.

### 4.     Headaches

Plaintiff argues the ALJ did not account for her headaches, which sometimes became migraines. At step two, the ALJ considered Plaintiff's diagnosed headaches but found them to be non-severe. R. 20-21. In his discussion of the RFC, the ALJ noted that Plaintiff reported headaches to her physician on March 31, 2017 (R. 583) and again to her mental health provider on April 6, 2017 (R. 635-636). R. 26-27. Plaintiff also reported to a mental health provider in November 2017 that she had migraines "most days" and her head hurts "a lot." R. 727. Plaintiff points to no additional medical records alleging headaches during the relevant period. She alleges that Plaintiff's mother witnessed Plaintiff's headaches becoming migraines once per month for the last two years, but Plaintiff's mother did not, in fact, give that testimony and did not refer to headaches. *See* R. 72-79 (mother's hearing testimony). Rather, Plaintiff testified she experienced a bad headache lasting about five to six hours, once or twice per week, if she did not take

medication before it got "too bad." R. 66-68. She testified she used to take headache medication but she lost her insurance and has not seen a doctor for headaches more recently. R. 67. As explained below in Part IV.D, the ALJ found Plaintiff's allegations to be inconsistent with the evidence of record, and the undersigned finds his conclusion was supported by substantial evidence.

The three time-relevant allegations of headaches to medical providers, two of which were made within a week of each other, do not demonstrate that Plaintiff's headaches were more severe than the ALJ explained or required additional work-related limitations. Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).[2]

**B.     ALJ Adequately Developed the Record**

Plaintiff contends that the ALJ should have further developed the record by obtaining a more recent psychological consultative opinion regarding Plaintiff's mental functioning limitations. Plaintiff argues that Dr. Smith's August 2015 consultative examination and assessment, undertaken nearly two years prior to Plaintiff's March 2017 alleged onset date, "clearly triggered the ALJ's duty to order an updated psychological consultative examination" and obtain more formal mental testing. ECF No. 15 at 9. Plaintiff refers to Dr. Smith's findings of deficits in processing speed and recall ability, Dr. Smith's reports of inability to manage funds and

---

[2] The undersigned notes the ALJ erroneously stated at step two that Plaintiff's counsel stipulated that Plaintiff's physical impairments were non-severe. R. 20. However, to the extent Plaintiff alleges this misstatement was reversible error (*see* ECF No. 15 at 3-4), the undersigned rejects the argument. The ALJ went on to explain why Plaintiff's physical impairments were unsupported by the record, and the undersigned identifies no harmful error in the remainder of the ALJ's analysis of physical impairments. Therefore, any alleged error regarding this misstatement was harmless and did not affect the remainder of the ALJ's decision.

interact with same-age peers, and her history of headaches and lack of health insurance, as evidence indicating updated evaluations were required.

The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

Moreover, an ALJ generally has "broad latitude in ordering consultative examinations." *Id.* at 1166. An ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient" to allow the ALJ to make "a determination or decision on [the claimant's] claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (providing examples of instances that may require a consultative exam).

The undersigned finds the ALJ adequately developed the record and rejects Plaintiff's arguments that an updated consultative exam was required. The administrative record is sufficiently clear and consistent. As explained above in Part IV.A.1, there is no clear evidence that Plaintiff's mental health symptoms have increased since 2015. Plaintiff's more recent mental health symptoms are adequately documented through treatment records, as the ALJ summarized in the decision. Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. Accordingly,

13

the ALJ was not required to order another psychological consultative examination or obtain other testing to assess Plaintiff's mental limitations. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).

Further, the limited evidence of Plaintiff's headaches occurring after the alleged onset date, as detailed above in Part IV.A.4, did not warrant further neurological testing. It is Plaintiff's, not the Commissioner's, burden to provide medical evidence in support of the RFC. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are . . . disabled."). Plaintiff's testimony and limited reports of headaches to health care providers during the relevant period do not indicate that further record development was required. *See Flaherty v. Astrue*, 515 F.3d 1067, 1072 (10th Cir. 2007) (finding ALJ was not required to develop record regarding migraines where claimant "failed to adduce evidence of a reasonable possibility that her migraines were a severe impairment").

In addition, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). Here, Plaintiff was represented by counsel at the hearing but did not challenge the sufficiency of the record at that time or request an updated consultative examination or testing related to headaches. R. 41-87. *See Hawkins*, 113 F.3d at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

C.     **ALJ's Analysis of Mental Impairments at Steps Two and Three Was Adequate**

Plaintiff contends that the ALJ erred by not explicitly incorporating his finding of step-three "moderate" mental limitations in the area of concentrating, persisting, or maintaining pace into the RFC assessment and hypothetical to the VE.  R. 21.  However, an ALJ is not necessarily bound by his step-three findings when determining a claimant's RFC.  *See* SSR 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").  The ALJ explained this legal principle in the decision.  R. 21-22 (stating that the mental limitations identified in the "paragraph B" functional criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC "requires a more detailed assessment").

Here, the ALJ accommodated Plaintiff's difficulties in concentration by limiting her to understanding, remembering, and carrying out simple to moderately detailed instructions, performing semi-skilled work, and interacting with co-workers and supervisors under routine supervision.  R. 22.  In reaching this determination, the ALJ discussed numerous records addressing Plaintiff's mental condition.  *See* R. 25-30.  The ALJ was not required to expressly include additional limitations regarding concentration, persistence, or pace in the RFC.  *See* SSR 96-8p (stating that the mental RFC determination requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three).  Plaintiff fails to demonstrate that her mental limitations were more severe than the ALJ indicated in the RFC.

**D.     ALJ's Consistency Analysis Was Legally Proper and Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.*  If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.*  Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).  As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to produce some (but not all) of the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record.  R. 24.  Plaintiff alleges the ALJ's analysis was insufficient, because his analysis amounts to mere "meaningless boilerplate," her activities of daily living do not support an ability to perform substantial gainful activity, and Plaintiff's testimony is in fact consistent with the medical records.  ECF No. 15 at 12-14.  In support of her argument, Plaintiff cites the following records: (1) a September 2016 treatment note in which Plaintiff reported depressed mood, anxiety, and difficulty concentrating, and a physician observed depressed and constricted affect and depressed mood (R. 575-578); (2) a December 2016 treatment note in which Plaintiff reported daily headaches, low motivation, and difficulty sleeping, and her physician observed anxious and depressed mood and constricted affect (R. 580-581); (3) a March 2017 psychiatry treatment note in which Plaintiff complained of headaches, problems with concentration, and worrying a lot, and her physician observed depressed and anxious mood and reactive affect (R. 583-584); (4) an April 2017 mental health treatment note stating that she "will increase ability to maintain basic needs 5 to 7 days a week" and "will use coping skills to manage symptoms 5 of 7 days a week" (R. 669); and (5) an April 2017 mental health treatment note stating Plaintiff would receive case management services and advocacy for outreach services (R. 675).

17

The undersigned finds that the ALJ's consistency analysis was proper. The ALJ's consistency analysis was more than mere boilerplate. In reaching his conclusion regarding consistency, the ALJ noted that Plaintiff's statements about the intensity, persistence and limiting effects of her mental symptoms were inconsistent with her own reports and with the medical evidence. R. 24. He explained that the medical evidence showed that Plaintiff has described daily activities that are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id.* Specifically, he noted that Plaintiff reported she can perform personal hygiene, prepare simple meals, such as microwave meals, and maintain chores such as laundry and dishes, although it takes her a while to do so because she is easily distracted. *Id.* He further explained that Plaintiff testified she is currently working part-time checking bags at the BOK Center, and that her mother testified that she visits with her girlfriends when they come over and that she likes to read and watch television. R. 24-25.

Later in the decision, the ALJ stated Plaintiff's description of the symptoms and limitations were generally inconsistent and unpersuasive, and she had not provided convincing details regarding factors that precipitated the allegedly disabling symptoms. R. 30. The ALJ again explained that Plaintiff's current part-time work at the BOK Center indicated her social anxiety and isolation were not as severe as alleged. *Id.* He credited Plaintiff's testimony as much as the evidence allowed, but he found "the extreme allegations as to functional limitations are simply not supported by the evidence as a whole." *Id.* He further considered the agency reviewers' opinions that Plaintiff was able to perform work with incidental interpersonal contact; perform tasks that are learned by rote with variables and little judgment required; work under supervision that is simple, direct, and concrete; and adapt to a work situation although unable to relate to the general public. R. 113, 125, 137, 157-158, 170-171, 183-184, 196-197. He found those opinions "very

persuasive and . . . consistent with the mental health treatment notes, medications prescribed, and the claimant's own testimony that she is indeed working on a part time basis at the BoK Center during public events as a bag checker." R. 31.

Plaintiff's cited medical records from the relevant period, which support her alleged depression, anxiety, and difficulty concentrating, do not indicate the ALJ's consistency finding was unsupported by substantial evidence. Most notably, the ALJ appropriately relied on Plaintiff's ability to work part-time checking bags at the BOK Center during events as evidence that her alleged anxiety and depression did not result in disabling symptoms. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (finding ALJ appropriately relied on evidence that claimant had been doing "some mechanic work and odd jobs around the house" as part of credibility determination).

The ALJ also properly relied on Plaintiff's mother's testimony that Plaintiff goes out with girlfriends and has them visit at her house once or twice per week. *See* R. 76-78. It is proper for the ALJ to consider Plaintiff's activities, including her current part-time work and social activities, in evaluating her complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (ALJ may consider a claimant's daily activities); SSR 16-3p, at *7 (stating that ALJ should consider claimant's daily activities as part of consistency analysis); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ appropriately found a claimant's description of her daily activities did not indicate significant limitations, where claimant could care for herself, her home, and her children, and she could drive, shop, handle finances, garden, visit friends, and eat out).

To the extent Plaintiff alleges the ALJ did not appropriately consider her headaches as part of the consistency analysis, the ALJ noted that Plaintiff reported headaches on two occasions to

her health care providers during the relevant period (R. 583, 635).  The undersigned further notes that Plaintiff reported headaches on one other occasion during the relevant period (R. 727), but did not otherwise report headaches to her health care providers.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (finding claimant's failure to report symptoms to physician was appropriate factor to support credibility/consistency determination).  The ALJ was entitled to consider the limited reports of headaches to health care providers as evidence that her headaches were not as severe as alleged.  *See Giuliano v. Colvin*, 577 F. App'x 859, 863 (10th Cir. 2014) (affirming ALJ's credibility finding that intermittent treatment for migraines suggested her migraines were not as debilitating as alleged).

Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p.  Plaintiff only asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).[4]

**E.    RFC Is Supported by Substantial Evidence**

In this allegation of error, Plaintiff broadly repeats her arguments regarding the ALJ's failure to develop the record by ordering updated consultative examinations, re-framing them as

---

[4] In this section, Plaintiff briefly contends that the ALJ was required to weigh Plaintiff's mother's testimony.  ECF No. 15 at 13 (citing SSR 06-03p).  However, because Plaintiff filed her claim on July 19, 2017, revised regulations regarding the evaluation of opinions from nonmedical sources apply to Plaintiff claim.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  The new regulations state that the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" using the factors employed in evaluating medical opinions and prior administrative medical findings.  20 C.F.R. §§ 404.1520c, 416.920c.  The authority to which Plaintiff refers, SSR 06-03p, has been rescinded for purposes of Plaintiff's claim.  *See* 82 FR 5844-01, at 5845.

errors in determining the RFC.  As explained above in Part IV.B, the undersigned identifies no error in developing the record.  In accordance with these findings, the undersigned identifies no error in the mental or physical RFC, or in the hypothetical question to the VE.

Moreover, contrary to Plaintiff's argument, the ALJ did not need a specific "RFC" opinion from a consultative examination to assess Plaintiff's functional limitations.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC.").

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by June 16, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v.*

*One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

   **SUBMITTED** this 2nd day of June, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**