## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

BARAESHEIA M. P.,                          )
                                            )
                      Plaintiff,            )
                                            )
v.                                          )          Case No. 20-CV-0174-CVE-JFJ
                                            )
KILOLO KIJAKAZI,[1]                        )
Acting Commissioner of Social Security     )
Administration,                            )
                                            )
                      Defendant.            )

## OPINION AND ORDER

Now before the Court is the report and recommendation of a magistrate judge (Dkt. # 19)

recommending that the Court affirm the decision of the Commissioner of the Social Security

Administration (Commissioner) denying social security benefits to plaintiff. Plaintiff has filed a

timely objection (Dkt. # 20) to the report and recommendation and the Commissioner has filed a

response (Dkt. # 21).

## I. BACKGROUND

Plaintiff submitted an application for Title II disability insurance benefits, Title XVI

supplemental security income benefits, and CDB benefits on July 19, 2017, alleging she had been

disabled since March 26, 2017. Dkt. # 12-5, at 2-3. In her application, plaintiff stated that she was

unable to work due to severe depression, asthma, migraines, bipolar depression, and anxiety. Dkt.

# 12-6, at 15. Plaintiff's claim for disability was denied initially and upon reconsideration. Dkt.

# 12-4, at 2-20, 25-52.

---

[1]     On July 11, 2021, President Biden named Kilolo Kijakazi, as acting commissioner of the
Social Security Administration, replacing Andrew Saul.

After receiving the denials, plaintiff requested a hearing before an ALJ. Plaintiff's hearing was held on April 8, 2019. Dkt. # 12-2, at 16. Plaintiff was represented by counsel at the hearing. Id. During the hearing, the ALJ questioned a vocational expert (VE) about potential hypotheticals relating to plaintiff's capabilities.

After the hearing, the ALJ issued a decision assessing the medical records provided, as well as plaintiff's testimony, and the testimony of the VE. The ALJ reviewed that information in conjunction with the five-step process outlined to evaluate whether plaintiff is disabled. See 20 C.F.R. §§ 404.1520(a) and 416.920(a) (describing the five-step process).

In his decision, the ALJ first found that plaintiff had not attained the age of 22 by the alleged date of disability. Dkt. # 12-2, at 21. The ALJ then determined that plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset of disability, but did note that plaintiff had held part-time jobs as a bag checker at an event center. Id. Next, at step two of his analysis, the ALJ found plaintiff had three severe impairments–depression, anxiety, and post-traumatic stress disorder (PTSD)–that significantly limited her ability to perform basic work activities. Id. The ALJ also found plaintiff had non-severe impairments, including asthma and headaches. Id. at 21-22. After noting those impairments, the ALJ found that neither the impairments, nor the combination of impairments, met or exceeded the requirements to establish an impairment in the Listings of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 22. In so finding, the ALJ placed specific emphasis upon listing 12.04, pertaining to depressive, bipolar, and related disorders; listing 12.06, pertaining to anxiety and obsessive-compulsive disorders; and listing 12.15, pertaining to trauma- and stressor-related disorders. Id.

2

The ALJ went on to state that the severity of the plaintiff's mental impairment did not satisfy the "paragraph B" criteria. The ALJ found plaintiff had shown a moderate limitation in three areas: "understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace." Id. at 22. He cited plaintiff's function report in support of his findings. The ALJ found that plaintiff had no limitation in adapting and managing oneself. Id. Because plaintiff's mental impairment did not cause at least two "marked" limitations or one "extreme limitation" the "paragraph B" criteria were not satisfied. Id. The ALJ then found that the plaintiff did not satisfy the "paragraph C" criteria. Id.

After finding that plaintiff did not meet or equal a listing at step three, the ALJ proceeded to step four of the analysis and found that plaintiff had the residual functional capacity (RFC) to "perform a full range of medium, light and sedentary exertion work." Id. at 23. He continued to note that "she is unable to climb ropes ladders, and scaffolds, and is unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts." Id.

He then stated that plaintiff "is able to understand, remember, and carry out simple to moderately detailed instructions [ability to perform up to and including semi-skilled work] in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision." Id. He noted that plaintiff "is afflicted with symptoms from a variety of sources, to include mental impairments, all variously described, that are of sufficient severity so as to be noticeable to her at all times, yet is able to remain attentive and response [sic] and perform work assignments within the above-cited limitations." Id. at 23. In support of his determination, the ALJ then summarized the evidence in the record. Id. at 23-26.

In that summary, the ALJ stated that he considered "all symptoms to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of [the code of federal regulations]." Id. at 24. The ALJ noted that, per the two step process of considering the plaintiff's symptoms, he must first determine whether there was an underlying medically determinable physical or mental impairment that could reasonably produced plaintiff's symptoms, and then evaluate the intensity, persistence, or functionally limiting effects of symptoms to determine the extent they limit plaintiff's functional capacity to work. Id. When considering plaintiff's RFC at this stage, the ALJ noted that where the limitations or symptoms are not supported by medical evidence, the ALJ may rely on other evidence in the record to determine plaintiff's limitations. Id.

The ALJ then detailed plaintiff's testimony and subjective complaints. Id. at 24. He noted her past work history as a cashier and her current intermittent work at the BOK Center as a bag checker at public events. Id. He also described her testimony regarding her difficulties maintaining employment. He then discussed plaintiff's mother's testimony. Id. at 25.

After that, the ALJ reviewed plaintiff's medical history. He discussed her treatment history at Family and Children's Services and YouthCare Tulsa, her prescribed medications, her height and weight over the relevant time frame, her self-reported symptoms, and her clinically-diagnosed illnesses. Id. at 26-31.

Thereafter, the ALJ discussed the agency doctor's findings regarding plaintiff's mental health. Id. at 31. At steps four and five of the analysis, the ALJ determined that plaintiff had no past relevant work but that there were jobs available in the regional and national economies that plaintiff could perform with her RFC. Id. at 32-33. Based on this finding, the ALJ determined that plaintiff

was not disabled. The Appeals Council found no basis to change the ALJ's decision and denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this case requesting judicial review of the denial of his claim for benefits, and the matter was referred to a magistrate judge for a report and recommendation.

Plaintiff raised five objections in her appeal: i) the ALJ failed to discuss and weigh objective examination findings and relevant medical evidence, including a consultative examiner report from 2015; ii) the ALJ failed to develop the record; iii) the ALJ's step-two and step-three analysis was improper, thereby infecting the remaining steps with error; iv) the ALJ's consistency analysis was improper; and v) the ALJ's RFC is not supported by substantial evidence. Dkt. # 19, at 5.

Addressing the first objection, the magistrate judge found that "[w]hile the ALJ did not discuss [the consultative examiner's] findings or weigh his opinions, the ALJ clearly considered [the consultative examiner's 2015] examination," noting that he expressly mentioned it in his decision. Id. at 6 (citing Dkt. # 12-2, at 25). The magistrate judge stated that, as the examination was in relation to an earlier application for social security benefits, the ALJ was not obligated to discuss that report. Id. at 6-7. The magistrate judge also found that the report's "findings do not support greater mental RFC limitations than the ALJ found," and therefore any failure to consider the report was harmless.

The magistrate judge then found that the remaining subsets of the first objection were without merit. She stated that, "[w]hile the ALJ should have discussed the effects of [p]laintiff's obesity," she did not identify reversible error as plaintiff did not demonstrate evidence of functional impairments resulting from obesity. Id. at 10. She then found that, contrary to plaintiff's assertions, the ALJ "did not ignore [p]laintiff's allegations [of side effects of her medication] but rather noted

[p]laintiff's testimony that she had 'some nausea from her medications.'" Id. at 11 (citing Dkt. # 12-2, at 25. Finally, the magistrate judge found that the ALJ did not commit reversible error by improper discussion of plaintiff's migraines and headaches. She found the ALJ's assessment of plaintiff's headaches and migraines as non-severe was based on substantial evidence. Id. at 11-12.

Next, the magistrate judge found that plaintiff's second objection, that the ALJ failed to adequately develop the record, was without merit. Id. at 12. The magistrate judge found that the administrative record was sufficiently clear and consistent as to plaintiff's mental health status, and that a consultative examination was not required in this instance. Id. Third, the magistrate judge found that the ALJ's analysis at steps two and three was adequate, stating that the ALJ considered the relevant evidence and appropriately accommodated plaintiff's mental health issues when crafting plaintiff's mental RFC. Id. at 15. Further, the magistrate judge found plaintiff failed to show how the RFC failed to accommodate plaintiff's limitations. Fourth, the magistrate judge found that the ALJ's consistency analysis was proper and supported by substantial evidence cited to in the decision. Id. at 16-20. Finally, the magistrate judge stated the RFC was supported by substantial evidence. Accordingly, the magistrate judge recommends that the Commissioner's decision be affirmed. Id. at 21.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. The parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). If a party objects, the Court "shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

In reviewing an objection to a social security benefits determination, this Court is limited to determining whether the ALJ has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). The ALJ's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005). Reversal is also appropriate where the ALJ fails to support his decision with substantial evidence. A decision is not supported by substantial evidence if the decision does not rest on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019). Even if a court might have reached a different conclusion, the ALJ's decision stands if it is supported by substantial evidence. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" Biestek, 139 S. Ct. at 1153 (quoting 42 U.S.C. § 405(g)). A court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision." Travas M.P. v. Saul, No.

18-CV-0663-CVE-JFJ, 2020 WL 203592, at *3 (N.D. Okla. Sept. 1, 2020) (citing Washington v.

Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).[2]

## III. ANALYSIS

Plaintiff raises four objections to the magistrate judge's report and recommendation. Dkt.

# 20, at 2. Plaintiff argues that i) the ALJ failed to discuss and weigh objective examination findings

and relevant medical evidence, including a consultative examiner report from 2015; ii) the ALJ

failed to develop the record; iii) the ALJ's step-two and step-three analysis was improper, thereby

infecting the remaining steps with error; and iv) and that the ALJ's RFC is not supported by

substantial evidence.[3] After reviewing the record and the objections, the Court finds that plaintiff's

objections are without merit and accepts the report and recommendation of the magistrate judge.

### A. Failure to Discuss the Consultative Examiner's 2015 Report

First, plaintiff argues that the magistrate judge incorrectly found that the ALJ's failure "to

discuss [the consultative examiner's] observations, diagnoses, and opinion" from a 2015

examination was not error. Dkt. # 20, at 2.[4] Plaintiff states that the "the evidence needed [to prove

plaintiff's disability] was for a chronic condition that has degenerated over time." Id. at 6. The

evidence in the 2015 report demonstrated that plaintiff's "poor functioning was directly linked to the

---

[2]     This and other unpublished decisions are not precedential, but they are cited herein for their
        persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

[3]     Plaintiff did not reassert the argument that the ALJ's consistency analysis was improper in
        her objection to the report and recommendation.

[4]     Plaintiff then, confusingly, goes on to explain why failing to order a consultative exam based
        on Dr. Smith's 2015 report was error. Dkt. # 20, at 2-3.

same disorders, and [plaintiff's] financial and insurance status precludes access to comprehensive psychological testing as needed to determine her limitations."  Id.

No law requires the ALJ "to discuss the opinions of a consultative examiner from a prior disability proceeding."  Arterberry v. Berryhill, 743 F. App'x 227, 230 (10th Cir. 2018).  "[A]n ALJ is not even required to discuss every piece of evidence in the ongoing disability proceeding, so long as the record shows she considered all of the evidence." Id. (citing Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).  As a result, the ALJ's failure to discuss Dr. Smith's opinion was not bare legal error.[5]  The ALJ took note of the report, but discussion of it was not required. As a result, this objection is without merit.

## B. Failure to Develop the Record

Second, plaintiff argues the ALJ failed to develop the record by failing to procure an updated neurophysiological examination to assess plaintiff's "ability to understand and follow work instructions while suffering from symptoms caused by anxiety and depression and limitations on her ability to concentrate, persist and maintain pace." Dkt. # 20, at 2.  Further, plaintiff states the ALJ failed to develop the record regarding plaintiff's migraine headaches and any possible functional limitations created by plaintiff's back and neck pain.  Id. at 2-3.  Plaintiff states that she put the ALJ on notice that further evidence was needed in the record.  Id. (citing Dkt. ## 12-7, at 59; id. at 118; 12-8, at 18; id. at 27).

---

[5]     The other arguments that flow from plaintiff's initial argument all state that the evidence within the reports demonstrate the true limitations of plaintiff's conditions.  Those arguments invite the Court to impermissibly re-weigh the evidence that has been evaluated by the ALJ, and are not appropriately addressed under this objection.

In support of the argument that plaintiff's mental RFC was not adequately developed, plaintiff states that the ALJ was required to order a consultative examination based on numerous reports that predate the alleged onset of disability. Id. at 3-4 (discussing reports from 2016, and 2014 reports from plaintiff's mother). Plaintiff also points to the symptoms noted in the consultative examiner's 2015 report. Id. at 3. Plaintiff argues that those records, and others, indicate worsening "mental health conditions" that were not addressed. Id. at 4 (citing Dkt. # 12-7, at 64 (September 2016 Family and Children's Services report discussing Tulsa Community College class anxiety); id. at 66 (same report); id. at 75-76 (September 2016 Family and Children's Services report discussing family-related anxiety and PTSD); id. at 86-87 (continuation of same September 2016 report); id. at 89-90 (October 2016 report stating, inter alia, "client reports improvement, as evidenced by . . . . role performance and self care"); id. at 68 (December 2016, Family and Children's Services report in which plaintiff represents "depression is not as bad as it used to be"); id. at 127-129 (December 2016 Family and Children's Services report in which plaintiff represents plaintiff has depression, anxiety, and PTSD but "she is on mediation and feels like it is working okay"); id. at 71 (March 2017 Family and Children's Services report stating plaintiff represents "mood has been doing ok"); id. at 122 (April 2017 Family and Children's Services report stating plaintiff feels "increased anxiety" due to the loss of family members in the past year, noting that she has felt depressed "a few times" in the past month, stating that she is getting enough sleep, and stating she is overeating).[6]

---

[6]     The Court is confused by plaintiff's record citations, as they do not demonstrate any dramatic negative developments overtime. Offering one piece of evidence that indicates increased anxiety due to plaintiff's familial loss does not overwhelm the evidence discussed in the ALJ's decision. Dkt. # 12-2, at 26-31. To the extent plaintiff believes otherwise, plaintiff failed to demonstrate that to the Court in her brief.

The Commissioner, in response (Dkt. # 21), argues that plaintiff cherry picks evidence, avoiding records that demonstrate that plaintiff's "symptoms improved [over time] and [that] she consistently was found to have a euthymic (normal) mood and congruent affect from May 2018 forward." Dkt. # 21, at 2 (citing Dkt. # 12-2, at 26-31). The Commissioner argues "[t]he ALJ summarized the time relevant medical opinions of record, clearly articulating why he found them persuasive." Id.

At the outset of the administrative proceeding "[t]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007). Thereafter, "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009) (quoting Flaherty, 515 F.3d at 1071). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting Baca v. Department of Health & Human Servs., 5 F.3d 476, 479–80 (10th Cir. 1993)). The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." Id. The ALJ generally has "broad latitude in ordering consultative examinations." Id. at 1166. "Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." Id. at 1167.

Examinations are ordered "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a. "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." Hawkins, 113 F.3d at 1169. Thus, the relevant issue before this Court is whether the plaintiff demonstrated there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability. This Court's disagreement with the weight the ALJ assigned any diagnoses, or considered them in conjunction with plaintiff's symptoms, does not warrant remand. Bowman, 511 F.3d at 1272.

Here, the issue is whether plaintiff has shown that an additional examination would prove useful to the assessment of disability. The Court finds that plaintiff has not met that burden. Plaintiff does not point to any records that contain suggestions that additional evaluation is necessary, nor do they contain referrals for further evaluation or examination for any of the issues plaintiff argues require further development. In fact, record evidence supports i) that medication was helping plaintiff manage her mental health conditions (see, e.g., Dkt. # 12-8, at 65 (May 2018 report in which plaintiff states medicine is helping); compare id. with id. at 56 (self-reported depression lowered by one point from May 2018 to December 2018); ii) that she had no physical restrictions imposed on her range of motion at any point for any reason (Dkt. # 12-8, at 223 (2015 report indicating no functional limitations)); and iii) that her headaches or migraines did not cause any provider or state agency reviewer to recommend further testing or treatment (Dkt. # 12-7, at 118). Additionally, none of the records states that more information was needed to make determinations

as to the cause or extent of plaintiff's conditions. They tend to demonstrate a treatment plan was being utilized to monitor and treat plaintiff's conditions.

Plaintiff points to the fact that plaintiff stated that she had no insurance, to support that plaintiff met her burden to show development of the record was required. Dkt. # 20, at 2-3 (citing Dkt. ## 12-7, at 59; id. at 118; 12-8, at 18; id. at 27 to support the claim plaintiff had met her burden). Lack of insurance does not establish that a consultative examination is warranted. Evidence demonstrating that further evaluation would be useful to determining disability is required to meet plaintiff's burden. Absent any indication of reports of unmanaged mental health symptoms, worsening migraines requiring an MRI or prescription treatment, or any treatment referrals or recommendations based on plaintiff's back and neck pain, plaintiff did not establish a consultative examination was required. See generally Cowan, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).

### C. Step Two and Step Three Analysis

Third, plaintiff contends that the analysis conducted at both step-two and step-three of the ALJ's decision was improper, thereby infecting the remaining steps with error. Dkt. # 20, at 7. In this argument, plaintiff essentially repackages her arguments that the ALJ failed to develop the record, thereby leading to an inaccurate RFC. Id. at 6-7; see also id. at 8 ("It is inappropriate for the ALJ to reach an assessment of RFC without expert medical assistance, especially where the medical evidence lacks necessary measures to assess functioning.") (emphasis added). It appears that plaintiff also argues that it was the ALJ's failure to discuss the records that predate the alleged date of disability onset that lead to an inaccurate RFC hypothetical. Id. at 7 ("The effects of all

impairments properly should be considered throughout the disability determination, and failure to consider all of Claimant's impairments is reversible error."); id. at 8 ("The ALJ's RFC hypothetical must contain all limitations of record. . . . This one did not.").  As both of these issues were addressed above, they will not be revisited here.  To the extent the objection rests on those grounds, this objection is without merit.

### D. Substantial Evidence

Finally, plaintiff asserts that the ALJ's RFC is not supported by substantial evidence.  Dkt. # 20, at 7-8.  The Court finds this objection fails largely for the reasons stated above.  Plaintiff points to a handful of medical reports in order to argue that the result is not supported by substantial evidence.  Id. at 8.  However, these citations[7] are invitations to re-weigh the evidence. The ALJ reasonably found that plaintiff could perform substantial gainful activity based on the records and testimony provided by plaintiff.  The ALJ supported his findings with adequate record evidence and did not fail to develop the record.   None of the information plaintiff points to refutes that point.  For the forgoing reasons, plaintiff's challenge to the substantial evidence standard fails.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 19) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **affirmed**.  A separate judgment is entered herewith.

---

[7] The Court notes that some citations do not state what plaintiff asserts.  For example, plaintiff cites "T 572 [like to be alone for fun]" for support, but "T 572" (Dkt. # 12-7, at 60) does not state the bracketed information.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to substitute Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, for Andrew Saul, defendant.

**DATED** this 14th day of July, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE